UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EDWIN RODRIGUEZ,  :

       Plaintiff  :  CIVIL ACTION NO. 3:19-1134

v.  :  (JUDGE MANNION)

WARDEN KATHY P. LANE, *et al.*,  :

       Defendants  :

## MEMORANDUM

### I. Background

Plaintiff, Edwin Rodriguez, an inmate formerly housed[1] in the Allenwood Federal Correctional Institution ("FCI-Allenwood"), White Deer, Pennsylvania, filed the above captioned Bivens[2] federal civil rights action pursuant to 28 U.S.C. §1331. The named Defendants are Kathy Lane, former FCI-Allenwood Warden; Micki Powanda, FCI-Allenwood Physician's Assistant; and Elizabeth Stahl, FCI-Clinical Director. Id.

Plaintiff alleges that "in or around 2011 or 2012, at FCI-Allenwood, Plaintiff injured his lower back while working in the federal Unicor work area;" specifically, "in the packing department while loading the trucks." Id. Plaintiff

---

[1] Plaintiff was released from custody and currently resides at 253 W. Sedgley Avenue, Philadelphia, Pennsylvania, 19140.

[2] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

states that he was "sent to the medical department to be evaluated, was prescribed pain medicine and never seen again." Id.

Subsequently, "in or around 2013-2014 snow season at FCI-Allenwood, Plaintiff re-injured the lower back while working as a compound worker/orderly," when "Plaintiff was ordered to shovel snow by Officer Stone, even though this was not Plaintiff's job detail." Id. Plaintiff claims that while shoveling, his shovel hit a cement ashtray which "hidden underneath the high snow and stopped Plaintiff from pushing any further." Id. Once he hit the ashtray, "Plaintiff re-injured his lower back and a new injury occurred on his right-side hip by the impact." Id.

As a result of Plaintiff's latest injury, Plaintiff claims that he has doctored from 2014-2017, "was seen by numerous medical assistants/staff at FCI-Allenwood and Plaintiff received no help but pain medication in the form of Elavil, Meloxicam, Ibuprofen and Naproxen." Id. Plaintiff states that he has had X-rays and physical therapy, but still remains in "consistent extreme pain in the lower back and hip area." Id. He claims that he has been recommended for an MRI, but "on February 8, 2018, the URC denied a request for Plaintiff to receive an MRI due to the lack of clinical findings of neuropathy to support the test." Id. As a result, Plaintiff is "still in extreme pain and does not know what the problem is or why it's hurting this bad." Id.

Thus, the Plaintiff filed the instant action claiming Defendants have "impinged upon Plaintiff's constitutionally-protected right by their actions of neglecting, wanton, malicious, willful and deliberate indifference to follow the proper statute/constitutional right of access to effective standard of care for a serious medical need. Id. For relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory relief and injunctive relief. Id.

Presently before the Court is Defendants' motion to dismiss and for summary judgment. (Doc. 15). While Plaintiff has twice been granted an opportunity to file a brief in opposition to Defendants' motion, (Docs. 19, 22), he has never filed a brief in opposition to Defendants' motion.

For the reasons that follow, the Court will grant Defendants' motion as unopposed.

## II. Standards of Review

### a. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to

demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

    In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement

required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

### b. MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

    In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

**III.   Statement of Undisputed Facts**[3]

Plaintiff, Rodriguez was housed in FCI-Allenwood from September 27, 2001 until July 30, 2018. (Doc. 16-1 at 7). During his incarceration at FCI-Allenwood, he was followed in chronic care clinic for Hepatitis C, Psoriasis, Allergic Rhinitis, and a myriad of pain complaints including low back pain, spasm of muscles, ankle pain, wrist pain, shoulder pain, etc. (Doc. 16-1 at 1-579, 2013-2018 Medical Records).

Rodriguez was known to the treatment team as having a history of "Drug Use Disorder" prior to incarceration with Heroine and Methadone, which often translates into hyperalgesia, increased encounters with medical providers, and other opioid seeking behaviors. Id.

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 16). Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

In 2011-2012, Rodriguez alleged he injured his lower back while working in a UNICOR work area while loading trucks and that he received pain medicine. Id.

In 2013, Rodriguez was seen by an Orthopedic Surgeon, who recommended Prednisone and Mobic (Non-Steroidal Anti-Inflammatory Medication). Id. Rodriguez did not have any symptoms or x-ray findings to clinically warrant any type of surgical intervention. Id. He admitted that he was able to regularly exercise five days per week by "running and doing a thirty-minute exercise session of push-ups, pull-ups, burpees, squats, dips, and abdominal exercises as reported by Rodriguez. Id.

A review of Rodriguez's medical record reveals that, in addition to pain medications, multiple x-rays were done during 2014 and 2017, to include a right shoulder x-ray, (which was negative), a left ankle and foot x-rays, which were negative except for arthritis of his heel bone. Id. Rodriguez reported low back pain on March 16, 2015, and he had a lumbar spine x-ray which was negative except for mild degenerative disc disease. Id. Rodriguez was seen a month later for his lower back pain and denied pain at that time. Id.

Rodriguez was seen on May 16, 2017, for exacerbation of lower back pain, a new lumbar spine x-ray was ordered which showed no radiographic evidence for acute compression fracture or malalignment; minimal facet arthropathy at L3-4 through L5-S1; disc spacing is preserved. Id. Rodriguez's

- 9 -

cervical spine x-ray was also negative except for mild degenerative disk disease at C6-C7. Id.

Rodriguez's lumbar x-ray on May 19, 2017, showed no fractures of malalignment, with mild arthritis at L3-L4 and through L5-S1, with disc spacing preserved. Id. Rodriguez was referred to Physical Therapy for further evaluation and treatment of low back pain, but after three sessions with the therapist and trial of a home exercise program, he was still reporting back pain not supported by physical exam findings or the x-ray. Id. The Physical Therapist stopped the therapy pending further PCP evaluation and imaging since no subjective improvement was reported by Rodriguez. Id.

Rodriguez requested a lumbar MRI on December 11, 2017. Id. A thorough review by the Utilization Review Committee (URC) of Rodriguez's symptoms and x-rays revealed that the MRI was not clinically warranted. Id. Rodriguez's exam on December 11, 2017, revealed full lumbar range of motion with intact forward flexion, hyperextension, lateral bending, and rotation. Id. Rodriguez had full and symmetric sensation and strength to his lower extremities and no neurologic deficits. Id.

On April 16, 2018, Rodriguez was evaluated for his lower back pain by the physician, at which time there was no clinical need for further imaging, given the normal lumbar x-ray and lack of progressive neurologic symptoms. Id. A thorough review of Rodriguez's medical record did not reveal any

- 10 -

findings suspicious for nerve root compression, spinal stenosis, lumbar degenerative disc disease, neurological deficits or any other clinical finding that would warrant a lumbar MRI. Id. Rodriguez did not have any clinical indicators for a lumbar MRI. Id. The following was noted regarding Rodriguez's continued complaint of unspecified back pain:

> Hx Low Back Pain: Last lumbar x-ray showed normal vertebral bodies, with preserved disc spaces, with straightening of normal lordosis, and minimal facet arthropathy at L3-L4 through L5-S1. There was no radiologic evidence of malalignment of acute compression fractures. Patient has normal lumbar range of motion, no numbness, tingling, atrophy, or any other signs of a radiculopathy. He reports normal urinary and bowel function. Denies saddle aesthesis and reports normal neurological function. He tells me he "pulled" his back 5 years ago in UNICOR and that his back has not been the same. So far, patient has had non-specific backpain that has not improved with Physical Therapy or NSAIDS. He has not had any serious progressive neurologic deficits, nor any other underlying conditions based on frequent medical evaluations and therefore no medical indication for an MRI. In talking to patient today, he does have an unrealistic expectation for a "pain free" life. We talked about the fact that he walked in my office comfortably, sat in the exam table carrying a normal conversation, with normal blood pressure. None of these findings clinically corelate with a serious medical condition that would warrant further imaging at this time.

(Doc. 16-2 at 429).

IV. **Discussion**

   1. **The Bivens Action**

Plaintiff's constitutional claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388. (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

### 2. Personal Involvement

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

In this case, Rodriguez is suing Defendant, Lane, based solely on her supervisory capacity as former warden. While it is clear that this Defendant has been sued because of her supervisory position, "liability cannot be predicated solely on the operation of respondeat superior." Rode, 845 F.2d at 1207; see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Rode, 845 F.2d at 1207). "[V]icarious liability is inapplicable to Bivens and

§1983 suits;" therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). A defendant's contemporaneous personal knowledge and acquiescence is required in order to establish personal knowledge. Rode, 845 F.2d at 1207-08.

Moreover, non-medical personnel such as Defendant Lane cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment from the prison's medical staff. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (quoting Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)). The undisputed evidence clearly shows that Rodriguez was being treated for his complaints. Thus, Defendant Kane is entitled to judgment as a matter of law.

### 3. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro,

834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment,

or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912

F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

Assuming, without deciding, that Plaintiff's medical needs were serious in the constitutional sense, the record evidence more than amply demonstrates that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff, himself, admits that he has been provided medical treatment, including medication, physical therapy, and exercises. (Doc. 1 at 2-3).

At best, Plaintiff's complaint demonstrates his disagreement with the type of treatment rendered, specifically, not being approved for an MRI. Though he may have disagreed with Utilization Review Committee's assessment that an MRI was not medically necessary, his disagreement with the course of action that was taken is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105-06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)). This is particularly so in light of the fact that there are no allegations in the

complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. To that extent, the record demonstrates that Plaintiff had been referred for x-rays, physical therapy and referred to an Orthopedic Surgeon for further treatment and care of his back pain, shows that Defendants continue to be attentive to Plaintiff's situation.

Thus, the Plaintiff's complaint amounts to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the Utilization Review Committee at the prison. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Defendants' motion for summary judgment will be granted.

## VI. **Conclusion**

Based upon the undisputed facts of record, Defendants' motion to dismiss and for summary judgment will be granted.

An appropriate order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 10, 2021**
19-1134-01